The first case set for oral argument this morning, July 17, 2014, is Case No. 14-6012, N. Ray Doug Walker et al., Sailor Music et al. v. Doug Walker. Mr. Riske. Good morning, Your Honors. May it please the Court. My name is Tom Riske. I'm here representing the defendant debtor, Doug Walker. Mr. Walker appeals a decision of the United States Bankruptcy Court for the Eastern District of Missouri holding a debt for alleged copyright infringement non-dischargeable as a willful and malicious injury. The plaintiffs in this case are the American Society of Composers, Authors, and Publishers, or ASCAP as I will refer to them. The defendant is a small-town bar owner and restaurateur who formerly managed Twister's Iron Horse Saloon in Imperial, Missouri. In its adversary complaint, ASCAP alleged that Mr. Walker allowed the performance of four copyrighted performances at Twister's in July 2009. Mr. Walker contends that the Court employed an inappropriate legal standard and gave undue weight to the plaintiff's evidence when ruling on the case. Specifically, Mr. Walker contends that the Bankruptcy Court failed to employ the heightened legal standard to determine willful and malicious injury under 523A6 as promulgated by the Supreme Court in the Geiger case and its progeny. 523A6 provides that any debt for willful and malicious injury by the debtor to another entity to the property of another is non-dischargeable. Willful and malicious are two separate and distinct elements, and the Eighth Circuit has set the bar high for certainty of harm regarding willfulness and maliciousness under 523A6. Well, the bar for the definition, as you indicated, of willfulness has been set by the Supreme Court. So whatever the Eighth Circuit has said about it really doesn't matter. Correct. The Eighth Circuit still has the definition of what malicious means. So we look to the Eighth Circuit for that, but we look to the Supreme Court for what willfulness means. For willfulness. And willfulness was described by the Geiger case as deliberate and intentional, not merely deliberate and intentional act that leads to injury. As the Geiger case noted, it referred to intentional torts as opposed to negligent or recklessly inflicted injuries. Maliciousness under 523A26 refers to conduct targeted at the creditor, certain or almost certain, to cause harm. One Eighth Circuit case would be the Inri Mira case. That was a battery case in which there were unwanted advances and ultimately kisses at a court reporter by a judge, despite the fact that the judge knew that the affection was not shared. Maliciousness has also been found as knowing wrongfulness or knowing disregard of the rights of the others. This would be the Eighth Circuit case in E-Ray Fours. In that case, an Ohio chiropractor engaged in sexual relationships with patients, despite his knowledge of the statute that prohibited such activity. And despite the fact that he had taken continuous education courses that reinforced the knowledge of the statute to him. So the Eighth Circuit basically sets forth that maliciousness must be more than reckless disregard of a creditor's economic interests and expectations. What we contend is that Mr. Walker had no contact with ASCAP or no notice, so his conduct could not be quote unquote knowing. But the bankruptcy court held otherwise. The bankruptcy court held otherwise. We don't believe that the bankruptcy court had the evidence in front of it to make that conclusion. The court cited Inree. Well, why not? There was a trial. There was testimony. And your client testified? She said that she didn't believe him. Right. She testified that, but there was. She found that. She found that. Why is that clearly erroneous? That's what you have to demonstrate here on that one, isn't it? With respect to facts, there was not evidence in front of the court to make that determination. Had there been someone at ASCAP who had appeared and said, I spoke with Mr. Walker. I advised him, do not play these recorded songs you're infringing on copyright. And then Mr. Walker had testified and said, I did not have that conversation. That could have been a finding that the bankruptcy court had made. But the issue is that the judge found your client's testimony not to be credible in that he did not have the information about the ASCAP claim based upon letters and items that were delivered to him. And so, I guess, can't she make that credibility determination and determine? Excuse me for interrupting. I think there was a stretch in her making that determination. Explain the stretch. The stretch is there was one notice that was received and return receipt as certified mail by Mr. Walker. But isn't there a presumption that if the mail isn't returned, that it's delivered? There's a presumption that it could be delivered. There's not a presumption that it was read, that Mr. Walker understood what was in the document. This very well could have been in other junk mail that Mr. Walker, albeit reckless. But didn't your client then take that action at his own peril? If it was delivered and he chose not to read it or chose not to respond to it, isn't that his problem? But our contention is that that is reckless. We don't dispute that he was a bad business owner. The company ultimately did fail. He's not working in that industry. That was the only time in his career that he worked in that industry. And the business did fail. We don't think he was a good business owner in that respect. Except didn't the bankruptcy judge find that he did receive the letters and therefore did know? The bankruptcy court made the leap, in our opinion, that since ASCAP presented evidence that they sent all these letters, Mr. Walker must have read those letters, chosen to disregard those letters while he knew what ASCAP was and what his duties to ASCAP would be. We don't, our testimony and what we are arguing is that Mr. Walker did not know what ASCAP was. His limited knowledge of copyright law was limited to the jukebox that he had in the restaurant, which he did pay royalties on and which he did testify that he would have paid ASCAP had he known of it. We believe that the court went too far in saying because ASCAP put on evidence that letters were sent and people appeared at the restaurant, that Mr. Walker knowingly, blatantly disregarded this, knowing that he would cause harm to ASCAP. So your whole case really turns around this one finding of fact. That's correct, Your Honor. We believe that constructive knowledge is not warranted in this case. We believe that you have to show intentional knowing injury. Oh, but once the court makes a finding that he got at least one of these letters, if not more, and knew what they said, the whole case just falls on the plaintiff's side once you make that finding. So unless you can convince us that that finding was clearly erroneous, you've got nothing. We believe that was clearly erroneous, Your Honor. I understand. There's really nothing else to hang your head on. Your Honor, we stipulated to the majority, if not all, of the facts at the trial. One of those facts was that the only notice that was received by Mr. Walker, or I won't say received, the only notice that was returned to ASCAP as received was the one that happened after the alleged infringement. Because he was in no position to deny that one. That's correct, Your Honor. Because he'd already signed for that one, so he couldn't deny that one. He could deny all the rest. He signed it. He did not recall receiving it, but he acknowledged that that was his signature. Your Honor, Mr. Walker testified that at the establishment, which I acknowledge was poorly run, people were answering the phone that weren't even working there. Some of the letters, most of the letters that were sent, went to the actual business and not to the post office box where Mr. Walker... Let's set the letters aside for a minute. Once he got sued, didn't he have the ability to fix this and have knowledge and all of that? Yes, Your Honor. His testimony, I believe, was the first time he learned of the alleged infringement was when he received a call from the St. Louis Business Journal after being sued. He had not been served yet. But he still elected or chose not to deal with the problem. The business ultimately shut down that year. So? I mean, he still was ignoring it even after he was sued. It appears as though there were problems with the district court litigation and all of those issues. It's correct that the infringing conduct under the plaintiff's complaint were the performances in July of 2009. There was no evidence put on that prior to that date, Mr. Walker had notice of the alleged infringement and had taken affirmative action to not retain the license. The Geiger standard is a heightened one because it requires the actor to intend the consequences of his act. Our position is he could not intend the consequences of his act because he did not know what ASCAP was and he contends he did not receive any notice that he was required to have a license with them. We believe at best his actions in failing to obtain a license were misguided, reckless, but that it would be a severe departure from Geiger to say that the court was right in showing that he intended the consequences of his act. We also believe that the court conflated copyright violations under Title 17, which need not prove willfulness. Copyright infringement includes constructive knowledge of infringement or reckless disregard. We believe that expanding Geiger to rely on aggravating factors, such as copyright violation, is an unfair and inappropriate extension of Geiger. We also believe that the decisions cited by the court are not controlling because willfulness was found to exist in those decisions where the debtor had been operating already under an ASCAP license, which was later terminated. Of course, the debtor in those situations would know what ASCAP was, know that the rights were being violated, and yet would consciously make the decision to disregard that and continue on. Additionally, in a lot of those cases, there were seasoned radio station owners who chose to disregard those rights. We believe that Mr. Walker had no knowledge of the ASCAP requirements, and therefore did not have the same knowing disregard of those decisions that were cited by the court. In the court's decision, the court concluded that the debtor was in fact aware of his legal obligation as an ASCAP licensee, but that he did not take the affirmative duty to learn about what ASCAP was. We do not believe that this was an appropriate finding by the court. It was found under the Geiger Doctrine. The only evidence before the court that showed that Mr. Walker had received notice was the September 2009 return receipt notice. Nothing other than the testimony and the document evidence, which was stipulated to, that showed that ASCAP had sent letters and called the establishment, was put forward by the plaintiffs to show that Mr. Walker had an intentional disregard for the plaintiffs' rights. He did not have knowledge of what ASCAP was. He did not have knowledge of his duties. No evidence was put forward by the plaintiffs to make an otherwise assertion. If the court has no further questions, I believe that would be my testimony. Thank you. Mr. Copeland. My name is Douglas Copeland. I represent the plaintiffs, Sailor Music, and five other owners of copyrights. They're all members of ASCAP, but the suit was not brought in the name of ASCAP. It was brought in the name of the individual copyright owners. What I'd like to start with is, in the brief of the appellant, they suggest a standard of review that is de novo on the facts. And I think we've already had some discussion here this morning that that's not the proper standard of review, and that instead the Rule 8103 rule of clearly erroneous needs to be applied in this case. There's no question of the dischargeability needing to be a finding that there was a willful and malicious injury, and the fact that willfulness and maliciousness is a question of intent and therefore a question of fact. All the cases that I could find from the Eighth Circuit and elsewhere indicate that after a trial, the clearly erroneous standard of review is appropriate for facts, obviously de novo for findings of law. The only case cited in the brief of appellant regarding standard of review and suggesting that the findings of fact would be de novo at this level is the Barboza case. Of course, that's a Ninth Circuit case. But most importantly, that would be enough, but I'll go on. That was an appeal from a motion for summary judgment. Obviously, there wasn't a trial. That was just paper evidence. And in fact, in that case, the Court did not attempt to base a ruling upon the facts in that case, but instead sent it back and remanded it for trial. We've already had our trial. We've already had our findings. We've already had our testimony before the Court. So I could not find any cases in the Eighth Circuit or elsewhere, for that matter, that after a trial of the case, an appeal to this panel would involve a de novo review of the facts. The Court specifically found the injury to the plaintiffs was willful and malicious. All of the issues that the appellants raised on appeal are attacking that finding. So the standard of view surely is clearly erroneous. So what were the facts? The facts were plaintiff produced evidence that there were 14 letters sent by ASCAP to Mr. Walker, 28 phone calls, and at least two personal visits. The defendant's evidence was I didn't get any letters, I didn't take any of the phone calls, and I didn't get any messages. As has been indicated, the Court specifically found that that testimony was not credible. The defendant would not even admit at trial that he received the one certified letter that he himself signed for. All he admitted was that was his signature, but he wouldn't even admit I got it. As has been indicated, willfulness is a deliberate act or intentional injury. I don't think there's any question there's many cases out there that infringement of a copyright of songs or other copyrights is willful. It is a deliberate act and it is an intentional injury. The maliciousness aspect, knowingly wrongful and without just cause or excuse, or knowing disregard for the rights of others. Again, the Court went into great detail in looking at the evidence in this case and found that to be maliciousness as well. There's some discussion in some of the cases about aggravating factors in coming to that maliciousness determination. One of those can clearly be a violation of federal law, the wrongness aspect of maliciousness. There are other cases that specifically find that intentionally ignoring correspondence advising of copyright law and obligations is another aggravating factor. And one of the things that did come out in trial, one of the very few things that the defendant was willing to admit to, knowing of, he admitted that he knew that royalties were owed to songwriters when songs were played. He had a jukebox in his establishment and he had a deal with the owner of the jukebox that the establishment was going to get 30 percent and the owner was going to get 70 percent. And he understood the reason was because there needed to be a payment of royalties to the owners of the copyrights of the song. So he even knew the concept. He even admitted he knew the concept. We would suggest that ASCAP went far and above any required standard of trying to inform this individual of his obligations. Obviously ASCAP is very interested in people using music, but they want them to comply with the copyright law. So in this case, sent him 14 letters, and I don't know if you've had a chance to look at any of those letters, but they very clearly demonstrate to even an unseasoned bar owner that there is a copyright law, that you can't use these songs without getting permission. And if you do, you stand to have significant penalties and consequences to it. There's also, as we stated in our brief, that an act can be malicious, even in the absence of a specific subjective intent to injure, and that the court may consider circumstantial evidence when making factual determinations of willful intent. We've obviously been around the block a bit with Mr. Walker. We had a district court case, we had the bankruptcy trial, and then we've had these appeals. Looking back at the district court case, you'll find that the defendant exchanged no documents when we did the Rule 26 exchange. The defendant refused to respond to plaintiff's request for production of documents. Defendant failed to respond or comply with the order of the district court compelling the production of documents. And finally, the defendant failed to respond to the order to show cause as to why you're not producing the documents that are requested or even responding to the request for documents. Throughout the contact by ASCAP of Mr. Walker, the district court action, the bankruptcy court case, it's been clear that defendant's plan and intent was to ignore ASCAP and all the information and warnings that were provided to him and steadfastly claimed to know nothing. That plan and defendant's lack of truthfulness was painfully obvious in his testimony before the bankruptcy court, before Judge Strott's states. And the court specifically recognized it and found that the defendant's testimony lacked credibility on not only the issue of knowledge but several other issues as well. As a consequence, it would be our position that there's no clear error in the findings of the court in this case. If you have any questions, I'd be happy to answer. Otherwise, I'll sit down. Thank you. I think you have like two minutes left if you want to use them for rebuttal. Two minutes and 15 seconds to be exact. Exactly. The bankruptcy court concluded that the debtor's actions rise above the requisite level of malice and thus that the debtor acted maliciously within the meaning accorded to 523A6 in the Eighth Circuit. This is an interpretation of the law. It's not a finding of fact. We don't believe that the court acted properly in stating that it was debtor's duty to know and comply with federal copyright law. We don't believe that that is what A6 contemplates. We believe that it's duplicative. It's much like the level of recklessness in the past cases that dealt with drinking and driving cases that prompted Congress to create A9. We don't believe that unknowing copyright infringement rises to the level of maliciousness under A6. Again, we don't dispute that Mr. Walker's business practices were careless, reckless, possibly even negligent. It would not be unreasonable to conclude that his actions in failing to obtain a license in the bar is negligent. In the absence of concrete proof that he had knowledge of the copyright infringement taking place in the establishment, we believe it was a far cry for the court to presume he had the headstrong and knowing intent to willfully harm the plaintiffs. Allowing the standard of recklessness or negligence to govern a determination of 523A6 dischargeability, we believe, lowers the heightened standards set by Geiger. It ignores the high bar for certainty of harm in the Eighth Circuit. And furthermore, we believe the court gave undue weight to the evidence presented by ASCAP and created an implied malice factor that we did not believe was appropriate under the circumstances. Thank you, Your Honor.